**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF TRENTON BOARD OF EDUCATION,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., *et al.*,<br><br>Defendants. | Civil Action No. 24-5647 (ZNQ) (JTQ)<br><br>OPINION |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon Defendant Umpqua Bank's ("Umpqua") Motion to Dismiss for Lack of Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (the "Motion," ECF No. 11.) Umpqua submitted a brief in support of their Motion ("Moving Br.," ECF No. 11-6), a Certification by Joseph R. McCarthy, Defendant's lawyer ("Certification," ECF No. 11-1), and various exhibits. (ECF Nos. 11-2–11-4, 11-7.) Plaintiff Trenton Board of Education ("Plaintiff") filed an opposition ("Opp'n Br.," ECF No. 15), to which Umpqua responded. ("Reply Br.," ECF No. 17.) The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] For the reasons set forth below, the Court will **GRANT** the Motion.

---

[1] Hereinafter, all references to Rules refer to the Federal Rules of Civil Procedure unless otherwise noted.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. PROCEDURAL HISTORY

Plaintiff filed its Complaint on April 25, 2024 against Umpqua, Bank of America North America, 707 Premier Sports, LLC, and various other unknown entities in Mercer County Superior Court. ("Compl.," ECF No. 1-1.)[2] Defendants collectively consented to removal and timely removed the case to federal court pursuant to 28 U.S.C. § 1332, based on diversity jurisdiction. ("Notice of Removal," ECF No. 1.)

On May 16, 2024, Umpqua filed a Motion to Dismiss for Lack of Jurisdiction. (ECF No. 11.) Thereafter, on or around July 12, 2024, Defendant Bank of America notified the Court that it reached a settlement in principle with Plaintiff. (ECF No. 19.) The Court therefore stayed the claims against Bank of America. (ECF No. 20.) Plaintiff and Bank of America continue to report on their efforts to finalize their settlement. (ECF Nos. 21–24.)

### B. FACTUAL BACKGROUND

As alleged in the Complaint, on July 29, 2022, Plaintiff issued and mailed a check (Check No. 199401) from its school warrant account payable to "Smith Systems, P.O. Box 951181, Dallas, TX 75395-1181" in the amount of $167,082.50 (the "check"). (Compl. ¶ 6.) The check, however, was intercepted in the mail, the original payee (Smith Systems) was altered to "707 Premier Sports LLC," and the check was later deposited into an account maintained at Umpqua and paid by Bank of America. (*Id.* ¶ 7.) On or about August 29, 2022, Plaintiff learned that the check had been fraudulently altered. (*Id.* ¶ 9.)

The Complaint asserts nine causes of action, three of which are directed to Umpqua (Counts Four, Five, and Eight). Because Umpqua is the only party to have filed the instant Motion,

---

[2] The status of 707 Premier Sports in this litigation is unclear to the Court. It is not represented by counsel and there is nothing on the docket to indicate that it has been served with process.

2

only the claims against it are relevant to this Motion. First, Plaintiff contends that Umpqua aided and abetted fraud (Count IV) because "[c]ritical to the success of this fraudulent scheme was the existence of a bank account" at Umpqua. (*Id.* ¶ 28.) According to Plaintiff, by "opening the Fraudulent Account on behalf of 707 . . . [and by] allowing transfers of funds out of the Fraudulent Account . . . Umpqua aided, abetted, and facilitated the fraudulent scheme of 707." (*Id.* ¶ 29.) As such, Umpqua was "negligent, grossly negligent, reckless, and/or acted in wanton and willful disregard of the harm caused to" Plaintiff. (*Id.*)

Plaintiff also brings a cause of action for negligent supervision against Umpqua (Count V) under the theory that certain employees were "acting under the direction and supervision of Umpqua Bank, thereby assisting in the fraud." (*Id.* ¶ 32.) Moreover, as alleged, Defendant had actual knowledge and was "willfully ignorant of the fact that the Fraudulent Account was being utilized to steal money." (*Id.*) Finally, Plaintiff brings a cause of action under the New Jersey Fraudulent Transfer Act ("NJFTA") against Umpqua (Count VIII)[3] because it purportedly transferred certain assets properly belonging to Plaintiff, contrary to the prohibitions of the NJFTA. (*Id.* ¶¶ 45–48.)

**II.   PARTIES' ARGUMENTS**

Umpqua moves to dismiss the Complaint for lack of personal jurisdiction under Rule 12(b)(2) because it lacks sufficient minimum contacts with New Jersey. (Moving Br. at 1.) Umpqua argues that the Complaint fails to set forth any specific allegations concerning personal jurisdiction over it in New Jersey. (*Id.* at 2.) According to Umpqua, there is no general jurisdiction over it because the Complaint points to no facts establishing it has contacts with New Jersey, "let

---

[3] In addition to Umpqua, Count Eight was also brought against 707 Premier Sports and the unknown Defendants. As stated, because this Motion only concerns Umpqua, the Court's Opinion has no bearing on the remaining Defendants.

3

alone the required continuous and substantial contacts" required for general jurisdiction.[4] (*Id.* at 6.) Moreover, Defendant argues that there is no specific jurisdiction because (1) there are no facts alleged that Defendant purposefully availed itself or directed its activities in New Jersey, and (2) conferring jurisdiction would violate fair play and substantial justice given that there is a high burden on Defendant. (*Id.* 9–10.)

Plaintiff argues that there is specific jurisdiction over Defendant because Defendant "accepted [the check] for deposit and presented [the check] for payment." (Opp'n Br. at 5.) Additionally, Plaintiff contends that "Umpqua knew that it was accepting for deposit and presenting a check drawn on an account in New Jersey that had been fraudulently altered and then transferring the proceeds from that fraudulently altered check to persons known." (*Id.* at 6.)[5] In Plaintiff's view, this is sufficient for Umpqua to reasonably anticipate being haled into Court in New Jersey. (*Id.*) As an alternative to dismissal for lack of personal jurisdiction, Plaintiff requests jurisdictional discovery. (*Id.* at 1, 3).

### III. APPLICABLE LAW

Pursuant to Rule 12(b)(2), a complaint is subject to dismissal for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). "If the district court does not hold an evidentiary hearing, the plaintiff[] need only establish a prima facie case of personal jurisdiction." *Metcalfe v. Renaissance Marine, Inc.*, 566

---

[4] Plaintiff does not dispute that there is no general jurisdiction over Defendant. (*See* Opp'n Br. at 1 ("[Trenton Board of Education] does not dispute that there is no general jurisdiction over Umpqua in this forum. Rather, [Trenton Board of Education] submits that . . . there is specific jurisdiction over Umpqua)).

[5] In a reply brief, Defendant adds that (1) "Plaintiff has failed to present any jurisdictional facts to the Court," in its Complaint (Reply Br. at 4), (2) there was no purposeful availment, (3) Plaintiff's claims do not arise out of or relate to Defendant's contacts, (*id.* at 5–6), and (4) Plaintiff is not entitled to jurisdictional discovery because Plaintiff failed to file a formal motion for jurisdictional discovery and there are no fact disputes to be resolved through discovery. (*Id.* at 7–8.)

F.3d 324, 330 (3d Cir. 2009) (internal quotations and citation omitted). And "[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003). Still, "[w]hile disputed issues are construed in favor of the plaintiff, allegations may be contradicted by the defendant through opposing affidavits or other evidence, at which point the plaintiff must respond with 'actual proofs, not mere allegations.'" *Am. Bd. of Internal Med. v. Rushford*, Civ. No. 14-6428, 2015 WL 5164791, at *5 (D.N.J. Sept. 2, 2015) (quoting *Patterson by Patterson v. FBI*, 893 F.2d 595, 603 (3d Cir. 1990)). Additionally, "by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e)). And "the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted). "Personal jurisdiction under the Due Process Clause depends upon the relationship among the defendant, the forum, and the litigation." *Id.* (internal quotation marks and citation omitted). More precisely, "[t]he Due Process Clause of the Fourteenth Amendment requires that nonresident defendants have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf*, 635 F. App'x 32, 37–38 (3d Cir. 2015) (citing *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). "A court has general jurisdiction when a defendant has 'continuous and systematic' contacts with the forum state." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)). Here, there is no dispute that there is no general jurisdiction over Defendants. Therefore, the only potential basis for the exercise of personal jurisdiction over Defendants is specific jurisdiction.

The inquiry as to whether a court may exercise specific jurisdiction over a non-resident defendant is tripartite. *See O'Connor*, 496 F.3d at 317. First, "the defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253. The contacts must be the defendant's own choice and not "random, isolated, or fortuitous." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *see Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (stating that for specific personal jurisdiction, the defendant must have "deliberately 'reached out beyond' its home" (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014))). The unilateral activity of a third party cannot satisfy the requirement that the defendant have minimum contacts with the forum state. *See Hanson*, 357 U.S. at 253 (noting that the mere "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State").

Second, if there is purposeful availment by a non-resident defendant, a court may exercise personal jurisdiction over that defendant only when a plaintiff's claims "arise out of or relate to

6

the defendant's contacts" with the forum state. *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

Third, if the non-resident defendant purposefully avails itself, and the plaintiff's claims arise out of or relate to the defendant's contacts with the forum state, "due process requires . . . that the maintenance of the suit [against the defendant] does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). And in determining whether the requirement to comport with "fair play and substantial justice" is satisfied, courts evaluate several factors. *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987). A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

## IV.   ANALYSIS

Here, for the reasons set forth below, the Court finds that it lacks specific personal jurisdiction over Umpqua. The Complaint alleges that Umpqua is a financial institution with offices in Washington, Oregon, Idaho, California, Nevada, Arizona, Utah, and Colorado. (Compl. ¶ 3.) The Complaint identifies no corresponding office in New Jersey. Further, Umpqua is alleged to be headquartered in Portland, Oregon, not New Jersey. (*Id.*)

A liberal reading of the Complaint demonstrates to the Court that Umpqua's only connection to Plaintiff's claims and New Jersey in general is that Umpqua accepted a check issued from New Jersey and later drew funds from the New Jersey account associated with that check.

This does not constitute purposeful availment. It was not Umpqua's choice to direct its activities to this state, nor did Umpqua target New Jersey. In the Supreme Court's chosen parlance for personal jurisdiction, it was merely "fortuitous" that Umpqua received a check issued from New Jersey. *Keeton*, 465 U.S. at 774.

Given that the Court finds there is no purposeful availment, its analysis ends here. The Court need not proceed to the remaining two prongs of the specific jurisdiction analysis—whether Plaintiff's claims arise out of or relate to Defendant's contacts with the forum, and whether the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Accordingly, the Court will dismiss the claims against Umpqua for lack of personal jurisdiction.[6]

As a separate matter, the Court will also deny Plaintiff's request for jurisdictional discovery as to Umpqua. Plaintiff has not articulated with sufficient particularity a basis for finding the requisite contacts between Umpqua and New Jersey to justify the imposition of jurisdictional discovery. *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010). Even if it had, Plaintiff's proposed discovery request pertains to the merits of its claims rather than the basis for this Court's jurisdiction over Umpqua. The type of discovery Plaintiff seeks can be obtained by the various mechanisms for third-party discovery. Accordingly, the Court finds that jurisdictional discovery is not warranted.

---

[6] Although not discussed by the parties, the Court notes that there is no personal jurisdiction based on the *Calder* effects test for personal jurisdiction either. *See Calder v. Jones*, 465 U.S. 783 (1984) (setting forth three factors that allow a plaintiff to demonstrate the existence of personal jurisdiction: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity). A fair reading of the Complaint demonstrates to the Court that Counts Four and Five asserting aiding and abetting and negligent supervision against Umpqua, respectively, do not read like intentional torts. Moreover, even if Count Eight, asserting a claim under the NJFTA, qualifies as an intentional tort under *Calder*, Umpqua did not expressly aim its conduct to New Jersey. Although the brunt of Plaintiff's harm is no doubt felt in New Jersey, because Plaintiff here fails to show that Umpqua "manifest[ed] behavior intentionally targeted at and focused on the forum," *see Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007), Plaintiff fails to establish jurisdiction under the *Calder* effects test.

## V.     CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendant's Motion.  (ECF No. 11.) The claims against Umpqua will be dismissed without prejudice.  An appropriate Order will follow.


Date: December 12, 2024

                                                                          ZAHID N. QURAISHI
                                                                          UNITED STATES DISTRICT JUDGE